IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONEL MEJIA, | : | |
| Plaintiff, | : | 1:13-cv-2237 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN D. EBBERT, *et al.*, | : | |
| Defendant. | : | |

**MEMORANDUM**

**August 27, 2015**

Plaintiff, Leonel Mejia ("Mejia"), an inmate who at all times relevant was incarcerated in the Special Housing Unit ("SHU") at the United States Penitentiary at Canaan ("USP-Canaan), Waymart, Pennsylvania, filed a *Bivens*[1] and Federal Tort Claims Act ("FTCA")[2] complaint on August 14, 2013, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The matter was transferred to this district on August 27, 2013. (Doc. 2).

The matter is presently proceeding *via* an amended complaint (Doc. 49) filed

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2] The FTCA, 28 U.S.C. § 2679(b)(1), provides that a suit against the United States is the exclusive remedy for persons seeking recovery for common law torts committed by federal employees within the scope of their federal employment. *See also* 28 U.S.C. §1346(b)(governing jurisdiction). Because the FTCA is a limited waiver of sovereign immunity which extends to the United States, but not to its agencies and employees, the United States is the only appropriate defendant.

on July 16, 2014. Therein, Mejia alleges that on November 23, 2012, he was assaulted by two inmates in the recreation cages. (*Id.* at p. 2). He alleges that the Defendants knew of the danger posed by placing him in an overcrowded recreation cage "to mak [sic] their job better by in dangering [sic] my life and others." (*Id.* at pp. 2, 4). He also contends that the policy or practice of placing inmates in overcrowded recreation cages lead to the violation of his constitutional rights. (*Id.* at 4). Lastly, he alleges that the United States was "negligent in managing the people he or she was supposed to supervise and created a policy or custom allowing or encouraging the illegal acts." (*Id.*)

Before the court is Defendants' motion (Doc. 58) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion will be granted

## I. MOTION TO DISMISS

### A. Standard of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as

true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

**B.     Discussion**

Defendants seek to dismiss Mejia's *Bivens* claim on the ground that he has filed to exhaust his available administrative remedies. In the "Exhaustion of Administrative Remedies" section of the amended complaint, Mejia indicates that he only filed a tort claim for his injuries and that the tort claim was denied. (Doc. 49, p. 2).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Specifically, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894–95 (S.D.N.Y. 1998)). Whether an inmate

has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006). It requires compliance with the prison's "deadlines and other critical procedural rules." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

The Federal Bureau of Prisons ("BOP") has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement. 28 C.F.R. §§ 542.10-542.15. In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. (Doc. 60-1, ¶ 4, citing 28 C.F.R. § 542.13). If informal resolution is

unsuccessful, then the inmate may raise his complaint with the Warden within twenty calendar days of the date of the incident. (*Id.* citing 28 C.F.R. § 542.14). If the inmate is dissatisfied with the Warden's response, he may then appeal to the Regional Director within twenty calendar days of the date of the Warden's response. (*Id.* citing 28 C.F.R. § 542.15). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. (*Id.*) No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. (*Id.*)

In the ordinary course of business, requests for administrative review filed by inmates are kept in the BOP's computerized database. (*Id.* at ¶ 5). Search of the administrative remedy index revealed the following:

> [B]etween November 23, 2012, the date of the physical assault alleged in th Amended Complaint and today's date[, November 25, 2014], [Mejia] submitted eight Administrative Remedy Requests and/or Central Office Appeals. None of the Administrative Remedy Requests and/or Appeals filed after November 23, 2012, raised issues connected with an assault or with staff at USP Canaan placing him in a recreation enclosure on or about November 23, 2012.

(*Id.* at ¶ 7).

Mejia concedes that he failed to exhaust his administrative remedies but argues, in citing to *Young v. Quinlan*, 960 F.2d 351, 356 n. 8 (3d Cir. 1992), that

exhaustion is not required because he only seeks monetary damages. (Doc. 68, p. 1). Mejia is mistaken in that it is well-settled that claims for monetary relief are not excused from the exhaustion requirement. *Booth*, 532 U.S. 731; *Nyhuis*, 204 F.3d at 74. Defendants' motion to dismiss the *Bivens* claim will be granted based on Mejia's failure to exhaust available administrative remedies.

## II. MOTION FOR SUMMARY JUDGMENT

The FTCA failure to protect claim against the United States is the only remaining claim. The United States seeks summary judgment on the ground that the claim is barred by the discretionary function exception to the FTCA. Mejia does not address the FTCA claim in any form in his opposition brief. (Doc. 68).

### A. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

    The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every

8

element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. Statement of Material Facts

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." *See* L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *Id.* "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be

9

served by the opposing party." *Id.* On June 30, 2015, Mejia was directed to file a statement of material facts specifically responding to the numbered paragraphs in Defendants' statement of material facts. (Doc. 67). Although he failed to comply with the order, he states in his "Statement of Disputed Factual Issues and Incorporated Brief in Opposition to Defendants' Motion for Summary Judgment" that "the statements in paragraphs 4 through 95 [all of which pertain to the November 23, 2012 assault and his subsequent transfer] support the allegations made in Plaintiff's complaint and prove his case." (Doc. 68, p. 2). Those statements primarily concern the FTCA claim against the United States. The pertinent statements have been extracted and are set forth below.

On November 23, 2012, at approximately 7:00 a.m., a Correctional Officer assigned to the SHU observed two inmates assaulting Mejia in Recreation Cage Number 8. (Doc. 60, ¶¶ 4, 39-40). Three Correctional Officers assigned to the SHU responded immediately to the fight. (*Id.* at ¶ 22). Upon arriving at Recreation Cage Number 8 at approximately 7:03 a.m., Officer R. Burns issued a direct order for the inmates to stop. (*Id.* at ¶¶ 24, 41). The inmates complied with the order. (*Id.* at ¶¶ 25, 42). Officer Burns placed one of the assailants in hand restraints, and escorted him to a holding cell to be medically assessed. (*Id.* at ¶ 26). Officer Atherton escorted Mejia from the recreation cage to a holding cell. (*Id.* at ¶

23). Officer E. Hayden responded to the reported fight at approximately 7:03 A.M. and by the time he arrived, the inmates had already ceased their assault upon Mejia. (*Id.* at ¶ 27). Officer Hayden assisted with pat searching and scanning the inmates for metal as they were escorted from the recreation cage. (*Id.* at ¶ 28).

At approximately 7:39 a.m., the staff Emergency Medical Technician (EMT) prepared the documentation so that Mejia could be transported to an outside hospital for medical evaluation and treatment. (*Id.* at ¶ 29). At approximately 10:22 a.m. Mejia reported to the EMT that his pain level was a five on a scale of zero to ten and that he was having some difficulty breathing. (*Id.* at ¶¶ 32- 33, 35). He was bleeding from approximately forty puncture wounds to his chest, back, and abdomen and also had a laceration on his left knee. (*Id.* at ¶ 34). The wounds were photographed. (*Id.* at ¶ 36). He was transferred to an ambulance crew for transport to a local hospital where he received medical treatment. (*Id.* at ¶¶ 35, 43, 45).

Mejia was discharged from the hospital and returned to USP Canaan later that same morning. (*Id.* at ¶ 46). He was seen by a Physician's Assistant (PA) upon his return. (*Id.* at ¶ 47). His pain level at that time was a seven on a scale of one to ten. (*Id.* at 48). He denied shortness of breath or chest pain. (*Id.* at 49). Note was taken of the numerous lacerations and abrasions and the application of

staples to repair a laceration to his right shoulder. (*Id.* at ¶¶ 50-52). He was prescribed Cephalexin and Ibuprofen and was instructed to return as needed. (*Id.* at ¶ 53). He did not seek any further medical treatment. (*Id.* at ¶ 54).

A Special Investigation into the incident included interviews of Mejia, the two inmate assailants, the staff member who first witnessed the incident, and the staff member who discovered the weapons. (*Id.* at ¶¶ 71, 81). The investigation also included the analysis of the weapons found in the recreation cage, and review of the medical assessments of the three inmates. (*Id.* at ¶ 81). Based upon the above-listed statements and evidence, it was determined that, on November 23, 2012, at approximately 7:00 a.m. two inmates assaulted Mejia with a homemade sharpened weapon in Recreation Cage Number 8. (*Id.* at ¶ 82). The two inmate assailants admitted to assaulting Mejia. (*Id.* at ¶ 83). A surveillance camera recorded most of the incident. (*Id.* at ¶ 6). The video depicts three inmates in a single recreation cage and shows that one of the two inmates was armed with a homemade sharpened weapon, which he used to repeatedly stab Mejia while the other inmate assailant struck Mejia with closed fists and held him on the ground. (*Id.* at ¶¶ 7, 84). Video recordings also showed that one of the assailants passed the weapon that he used to stab Mejia to an inmate in the adjacent recreation cage. (*Id.* at ¶ 85). A sharpened metal weapon with blood stains on the handle and a

sharpened plexiglass weapon were later recovered from this area by Officer Voda. (*Id.* at ¶ 86). The presence of blood stains on the handle of this weapon lead the Investigator to conclude that this was the weapon used during the assault. (*Id.* at ¶¶ 87-88). Based upon this information, and the medical assessments that indicated that Mejia sustained approximately 40 puncture wounds to his upper body and a laceration to his left knee, the investigator recommended that the two inmate assailants be disciplined. (*Id.* at ¶ 89-90). He was also recommended that Mejia be kept separate from the two inmates and that he be transferred to another institution. (*Id.* at ¶ 91). On September 29, 2014, Mejia was transferred from USP Canaan. (Id. at ¶ 94). On October 6, 2014, he was designated to the United States Penitentiary at Terre Haute, Indiana, where he is currently incarcerated. (Id. at ¶ 95).

On November 23, 2012, it was the practice at USP Canaan to place no more than four inmates in the same SHU recreation cage at the same time. (*Id.* at ¶ 93).

### C. Discussion

By virtue of the FTCA, Congress has consented to liability for money damages suits against the United States for injury or loss of property "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §

13

1346(b)(1)  The FTCA allows recovery for damages for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee.  *United States v. Muniz*, 374 U.S. 150 (1963).

In considering an FTCA claim, the law of the place where an act or omission occurs is to be applied.  28 U.S.C. § 1346(b).  Because USP Canaan is in Pennsylvania, Pennsylvania law applies.  Under Pennsylvania law, a plaintiff must prove the following elements to establish a prima facie claim for negligence: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage."  *Krentz v. Consol.Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2006).

Defendant argues that Mejia's FTCA claim is barred by the discretionary function exception, an important limitation on the FTCA's waiver of sovereign immunity codified at 28 U.S.C. § 2680(a).  Because sovereign immunity can only be waived by the sovereignty, the circumstances of its waiver must be observed scrupulously, and not expanded by the courts.  *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994).  The discretionary function exception provides that the United States will not held liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or

> regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This limitation was imposed "to protect certain important governmental functions and prerogatives from disruption," *Molzof v. United States*, 502 U.S. 301, 311 (1992), and "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1994); accord *United States v. Gaubert*, 499 U.S. 315, 323 (1991). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808; accord *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Because of this and other limits, the FTCA provides no assurance that persons injured by federal employees will be compensated. *Dalehite v. United States*, 346 U.S. 15, 17 (1953).

"Although a plaintiff bears the burden of demonstrating that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity (*i.e.,* that the requirements of 28 U.S.C. § 1346(b)(1) are met), the

15

Government has the burden of proving the applicability of the discretionary function exception." *S.R.P. v. United States*, 676 F.3d 329, 333 (3d Cir. 2012) (citing *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008)). As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue. *Merando*, 517 F.3d at 165. Courts then apply a two-part test to determine whether the discretionary function exception bars suits against the United States. *See Gaubert*, 499 U.S. at 323; *Berkovitz*, 486 U.S. at 536; *Varig Airlines*, 467 U.S. at 814; *Dalehite*, 346 U.S. at 17. The Third Circuit sets forth this two-part test as follows:

> Courts make two-part inquiries to determine whether the discretionary function applies in any particular case. *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). First, a court must determine whether the act giving rise to the alleged injury and thus the suit involves an "element of judgment or choice." *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically proscribes a course of action for an employee to follow', because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958–59); *see also Mitchell v. United States*, 225 F.3d at 363; *Cestonaro*, 211 F.3d at 753.
>
> . . .
>
> Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23, 111 S.Ct. at 1273.

16

> Because the purpose of the exception is to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy. *Id.* (internal quotation marks and citations omitted). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325, 111 S.Ct. at 1275; *see also Mitchell*, 225 F.3d at 363–64; *Cestonaro*, 211 F.3d at 753; *Sea–Land Serv., Inc. v. United States*, 919 F.2d 888, 892 (3d Cir.1990).
>
> *Id.* (internal quotation marks and citation s omitted).

*Merando*, 517 F.3d at 164–65. If the challenged acts and omissions conceivably involve policy considerations and are discretionary in nature, they are immune from suit under the FTCA. *See id.*; *Gaubert*, 499 U.S. at 322–25.

The BOP conduct at issue in this case—the alleged failure to protect Mejia from his assailant—is governed by a federal statute which requires the BOP to provide for the "protection" and "safekeeping" of inmates in its care. See 18 U.S.C. § 4042(a)(2), (3). This statute leaves the implementation of these duties to the discretion of prison officials and "how best to protect one inmate from the threat of attack by another is of the kind that the discretionary function exception was designed to shield." *Donaldson v. United States*, 281 F. App'x 75, 76-78 (3d

Cir. 2008); *see also Rinaldi v. U.S.*, 460 F.App'x 80 (3d Cir. 2012). There is no federal statute, regulation or policy that requires the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates. *Rinaldi*, 460 F. App'x at 81.

Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception. *See Rinaldi*, 460 F. App'x at 82 (collecting cases). The above demonstrates that measures taken by BOP officials with respect to inmate safety from attacks by other inmates involve an element of judgment or choice. "[E]ven if § 4042(a) imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.*" Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998). On November 23, 2012, it was the practice at USP Canaan to place no more than four inmates in the same SHU recreation cage at the same time. (Doc. 60, ¶ 93). Only three inmates were placed in Recreation Cage Number 8. As to the second prong, as noted *supra*, a judgment as to how best to protect one prisoner from attack by another is of the kind that the discretionary function exception was designed to shield. *Mitchell*, 225 F.3d at 363; *see, e.g., Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (holding

18

that prison administrators should be afforded wide-ranging deference in implementing and executing policies because discretion is needed to preserve internal discipline and maintain institutional security); *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (prison officials have discretionary power over the safety of the institutions they operate).

Because both prongs of the two-part test are satisfied, Mejia's negligent failure to protect claim is barred by the discretionary function exception to the FTCA. Further, as noted *supra*, Mejia wholly fails to address the Defendant's summary judgment motion as it relates to the FTCA claim. (Doc. 68). Thus, motion for summary judgment will be granted as to the FTCA.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion (Doc. 58) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of Civil Procedure 56 will be granted.

A separate order will enter.